**UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
BRIDGEPORT DIVISION**

----------------------------------------------------------x
In re:                                                            :          Chapter 7
                                                                       :
                                                                       :          Case No.: 09-51697 (AHWS)
                                                                       :
    Edmund Richard Belak,                 :
        Debtor.                                    :
----------------------------------------------------------x

APPEARANCES:

Kenneth E. Lenz                                          Attorney for Movant
P.O. Box 965                                                Edmund Richard Belak
236 Boston Post Rd., 2nd Floor
Orange, CT 06477

Richard H. Agins                                         Attorney for Respondent
100 Pearl St., 14th Floor                            James A. Tiani
Hartford, CT 06103

**MEMORANDUM AND ORDER ON MOTION TO AVOID NONPOSSESSORY, NONPURCHASE-MONEY SECURITY INTEREST UNDER 11 U.S.C. § 522(f)**

Alan H. W. Shiff, United States Bankruptcy Judge:

    Edmund Richard Belak commenced this chapter 7 bankruptcy case on August 26, 2009. On October 14, 2009, he filed this motion to avoid a lien on household furnishings and goods (hereafter, the "Property"). (Doc. # 12.) The respondent, James A. Tiani, objected, claiming that he holds title to the Property. (Doc. # 33.)

**BACKGROUND**

    The following facts are undisputed. Beginning in December 2004 and pursuant

to a series of leases, Belak rented 54 Church Street, New Canaan, Connecticut ("Premises") from James A. Tiani which he furnished with the Property. (*E.g.*, Doc. #33.) In 2007, Belak failed to meet his monthly rental obligation and became indebted to Tiani for approximately $26,000. Belak proposed giving and Tiani agreed to accept a transfer of the Property under a so-called "Collateral Agreement" which Belak drafted and signed on February 16, 2009. Tiani signed the Collateral Agreement on February 20, 2009. ( Movant's Ex. A.) In October 2009, Belak vacated the Premises because he was unable to pay his monthly rental obligation. (Tr. 17:2-3.)

## DISCUSSION[1]

The parties agree that the sole issue to be decided here is whether the Collateral Agreement gave Tiani a lien on or title to the Property. That issue turns on the meaning of the Collateral Agreement.

The meaning of a contract is determined by a fair and reasonable construction of its language. *Isham v. Isham*, 972 A.2d 228, 235 (Conn. 2009) (quoting *Issler v. Issler*, 737 A.2d 383, 389 (Conn. 1999)). If the language is unambiguous, the intent of the parties is a question of law. *Id.* (citing *Issler*, 737 A.2d at 389). On the other hand, if the contract is ambiguous, the determination of the parties' intent becomes a question of fact. *Id.* (quoting *O'Connor v. Waterbury*, 945 A.2d 936, 946 (Conn. 2008)).

---

[1] To determine whether the Property is property of the estate pursuant to § 541, the court applies Connecticut state law. *See Butner v. U.S.*, 440 U.S. 48, 55 (1979) ("Property interests are created and defined by state law."); *see also In re Pruitt*, 401 B.R. 546, 553 (Bankr. D. Conn. 2009) (noting that a determination of what is property of the estate pursuant to § 541 necessarily references state law).

A contract is ambiguous if the parties' intent is not clear from its text. *Alstom Power, Inc. v. Balcke-Durr, Inc.*, 849 A.2d 804, 812 (Conn. 2004) (quoting *Tallmadge Bros., Inc. v. Iroquois Gas Transmission System, L.P.*, 746 A.2d 1277, 1288 (Conn. 2000)) ("[A]ny ambiguity in a contract must emanate from the language used in the contract rather than from one party's subjective perception of the terms."). Generally, a writing that includes facially incompatible terms is ambiguous. *In re Broad Assoc. Ltd. P'ship*, 129 B.R. 328, 331 (Bankr. D. Conn. 1991). A contract is also ambiguous if it is susceptible to more than one reasonable interpretation. *19 Perry St., LLC v. Unionville Water Co.*, 987 A.2d 1009, 1018 (Conn. 2010) (quoting *Bristol v. Ocean State Job Lot Stores of Conn.*, 931 A.2d 837, 842 (Conn. 2007)).

In contrast, a contract is unambiguous if its language is clear and conveys the precise intent of the parties. *Lewis v. Frazao Building, Corp., et al.*, 972 A.2d 284, 291 (Conn. App. 2009). "[T]he mere fact that the parties advance different interpretations of the language in question does not necessitate a conclusion that the language is ambiguous." *Id.* (quoting *Jo-Ann Stores, Inc. v. Property Operating Co., LLC*, 880 A.2d 945, 953 (Conn. App. 2005)).

To determine whether the Collateral Agreement is ambiguous, the court turns to its relevant text:

> <u>Caption</u>: "Collateral Agreement." (Movant's Ex. A.)
>
> <u>Paragraph 1</u>: Belak "submit[s] my household furnishings as identified in the attached independent appraiser report (the "Inventory") . . . which have a fair market value of $31,365 as collateral for all unpaid

rent to Mr. James A. Tiani." (Movant's Ex. A, ¶ 1.)

Paragraph 2: "[I]n lieu of Mr. Belak's payment of $21,000, or any portion of that amount or further amount, of unpaid rent to James A. Tiani. . . . Mr. Tiani has the right to sell . . . or take possession of . . . any furnishings listed in the Inventory at his discretion, so as to receive payment for the rent past due." (Movant's Ex. A, ¶ 2.)

Paragraph 3: "Should Mr. Tiani exercise his right to sell, or take possession of any of furnishings listed in the Inventory, he will provide an original bill of sale of each of each item so as to provide Mr. Belak [with] an accounting of the back rental amount still due." (Movant's Ex. A, ¶ 3.)

Paragraph 4: "[W]hen Mr. Belak remits to James A. Tiani amounts credited to the unpaid rent he may remove items at his discretion from the Inventory up to their appraised dollar value for the payment of unpaid rent and identify in writing to Mr. Tiani the items removed. Should Mr. Belak become delinquent on rent payment after becoming current, then this Collateral Agreement again becomes in force . . . ." (Movant's Ex. A, ¶ 4.)

Paragraph 5: "Mr. Belak will have the full use of and keep in good condition any furnishings listed in the Inventory during the terms of this Collateral Agreement, except for those that Mr. Tiani chooses to sell, or take possession of . . . ." (Movant's Ex. A, ¶ 5.)

The text of the Collateral Agreement is ambiguous because it is susceptible to two interpretations. Under one interpretation, as asserted by Belak, the Collateral Agreement conveys to Tiani a security interest in the Property. That interpretation is supported by the use of the word *collateral* throughout the text, including the caption. Because terms used in a contract are to be accorded their ordinary and plain meaning, *Allstate Life Ins. Co. v. BFA Ltd. P'ship*, 948 A.2d 318, 322-23 (Conn. 2008), the parties

may have intended the adjective *collateral* to be defined as 'property that is pledged as security for payment of a debt'. *See Webster's New Collegiate Dictionary* 220 (1975) (defining collateral as property that is "used as security as for payment of a debt . . . ."). Moreover, paragraph 3 may be read to give Tiani a security interest with an option to sell or take some or all of the Property, provided that if exercised, Tiani would be required to provide an accounting of the rental arrearage then owed.

Alternatively, the Collateral Agreement may be read, as asserted by Tiani, to convey title to the Property to Tiani with Belak retaining a right of redemption. For example, paragraph 2 may give Tiani ownership of the Property, including the right to sell or take physical possession of the Property, *in lieu* of Belak's payment of the rental arrearage. Paragraph 4 purports to give Belak a right of redemption, allowing him to *regain* ownership if he were to made a cash payment to Tiani. Further, under paragraph 5 Belak retains the right to use the Property, except for those items Tiani exercises his ownership rights over, *i.e.*, except for those items he decides to take physical possession of or sell.

Having found that the Collateral Agreement is ambiguous, the court may consider parol evidence to determine whether the parties intended to convey to Tiani a lien on or title to the Property. *In re Broad Assoc.*, 129 B.R. at 331; *Palozie v. Palozie*, 927 A.2d 903, 912 n.8 (Conn. 2007) (Parol evidence may be used to, *inter alia*, "explain an ambiguity appearing in the instrument."). Within the penumbra of that assessment, the court concludes that the Collateral Agreement was intended to transfer title to the Property to Tiani. After observing his demeanor and listening to his testimony, the court

finds Tiani's testimony credible that prior to the drafting and signing the Collateral Agreement, Belak, the contract's drafter, informed him the Property was his:

- "I [Belak] am now living in a house with your [Tiani] property." (Tr. 46:1-2.)

- "I [Belak] am living in a house furnished by you [Tiani]." (Tr. 46:5-6.)

- "If and when I [Belak] leave . . you [Tiani] can now rent a fully furnished house." (Tr. 46:6-7.)

The court notes that Belak's attorney did not cross examine Tiani on that testimony nor did he offer any rebuttal evidence on that subject. Moreover, that evidence is consistent with Belak's testimony that based on the terms of the Collateral Agreement, if he failed to remit payment in cash to satisfy the rental arrears, he had no right to remove the Property from the Premises. (*See* Tr. 34:9-11.) In other words, unless Belak redeemed the Property, it continued to be owned by Tiani. Belak has made no claim that he redeemed or attempted to redeem the Property.

## CONCLUSION

Having found that the Property was transferred to Tiani, Belak's motion to avoid a lien is denied, and it is SO ORDERED.

Dated this 6th day of May 2010 at Bridgeport, Connecticut.

Alan H. W. Shiff
United States Bankruptcy Judge